# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40551**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nathaniel A. CASILLAS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 September 2025

———————————

*Military Judge*: Matthew D. Talcott;[1] Jennifer E. Powell (arraignment); Tyler B. Musselman (motions hearing); Christopher D. James.

*Sentence*: Sentence adjudged 26 June 2023 by GCM convened at Osan Air Base, Republic of Korea. Sentence entered by military judge on 11 August 2023: Confinement for 4 years and 11 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Colonel G. Matt Osborn, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEARLEY joined. Judge MASON filed a separate opinion concurring in part and dissenting in part.

———————————

[1] Pursuant to Article 30a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 830a.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

JOHNSON, Chief Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of wrongfully possessing child pornography and one specification of wrongfully viewing child pornography, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2] The court members sentenced Appellant to be confined for four years and 11 months, reduction to the grade of E-1, and a reprimand. The convening authority did not modify the findings or sentence, but deferred the reduction in grade and automatic forfeitures until entry of judgment, waived automatic forfeitures for six months or the expiration of Appellant's term of service for the benefit of Appellant's dependents, and supplied the language of the adjudged reprimand.

Appellant raises 12 issues on appeal, which we have reworded: (1) whether the Double Jeopardy Clause of the Fifth Amendment[3] requires Appellant's convictions to be set aside because Appellant was twice tried for the same "material;" (2) whether Appellant was denied effective assistance of counsel with respect to double jeopardy; (3) whether the Government improperly severed known offenses without proof of a manifest injustice; (4) whether the findings are factually insufficient; (5) whether the two specifications are multiplicious; (6) whether Appellant was denied effective assistance of counsel with respect to multiplicity; (7) whether the convening authority impermissibly considered the race and gender of potential court members when detailing members to Appellant's court-martial; (8) whether the military judge abused his discretion by admitting a redacted entry of judgment from Appellant's prior court-martial; (9) whether Appellant's sentence is inappropriately severe; (10) whether the application of the 18 U.S.C. § 922 firearms prohibition to Appellant warrants correction; (11) whether the record of trial is incomplete; and (12) whether the search of Appellant's phone violated his rights under the Fourth Amendment.[4,5] In addition, although not raised by Appellant, we consider an

---

[2] Unless otherwise noted, all references in this opinion to the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] U.S. CONST. amend. V.

[4] U.S. CONST. amend. IV.

[5] Appellant personally raises issue (12) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

additional issue (13): whether Appellant is entitled to relief for facially unreasonable post-trial and appellate delay.

With respect to issue (10), we find no relief from this court is warranted. *See United States v. Johnson*, __ M.J. __, No. 24-0004, 2025 CAAF LEXIS 499, at *14 (C.A.A.F. 24 Jun. 2025) (holding this court is not authorized to modify the 18 U.S.C. § 922 firearm prohibition indication on the staff judge advocate indorsement to the entry of judgment).

We have carefully considered issues (3) and (12) and find they warrant neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

With respect to issue (1), we find relief is warranted with respect to the finding of guilty as to Specification 1 of the Charge, which we set aside, and as to the sentence, which we reassess. In light of our resolution of issue (1), we do not address issues (5), (6), or (9).

With respect to issue (8), we find error, and we have taken the potential prejudicial effect into account in our reassessment of the sentence.

With respect to the remaining issues, we find no further error that materially prejudiced Appellant's substantial rights, and we affirm the findings of guilty as to Specification 2 and the Charge, and the sentence, as reassessed.

## I. BACKGROUND

The case presently under review is Appellant's second court-martial (*Casillas II*). In order to explain the course of that trial and the substance of several issues Appellant has raised on appeal, it is necessary to describe the relationship between *Casillas II* and Appellant's first court-martial (*Casillas I*).[6]

An Internet service provider identified a commercial email account associated with Appellant as containing possible child pornography and contacted the National Center for Missing and Exploited Children (NCMEC). On 6 February 2020, NCMEC then contacted the Air Force Office of Special Investigations (OSI) regarding the account. The emails in question had been sent on or about 7 January 2020 between Appellant and another Air Force member, then-Master Sergeant AC, a married female servicemember stationed in Europe. At the time, Appellant was stationed in the Republic of Korea. On 24 March 2020, OSI agents brought Appellant to their detachment at Osan Air Base, Republic

---

[6] The findings and sentence from *Casillas I* are presently and separately before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

of Korea, for an interview.[7] At that time the agents also seized Appellant's cell phone, an iPhone XR. OSI sent Appellant's phone to the Department of Defense Cyber Crimes Center (DC3) where a forensic analyst, Petty Officer First Class (PO1) IA, examined it.

OSI's investigations disclosed substantial misconduct by both Appellant and AC.[8] As a result, five charges and 22 specifications against Appellant were referred for trial by general court-martial (*Casillas I*). These specifications included, *inter alia*, one specification each of wrongfully possessing and wrongfully viewing child pornography on Appellant's iPhone XR between on or about 1 December 2019 and on or about 24 March 2020, in violation of Article 134, UCMJ.

In November 2022, in preparation for a motions hearing related to *Casillas I*, trial counsel and PO1 IA, the DC3 forensic analyst, together reviewed evidence from Appellant's phone. During their review, PO1 IA discovered additional images of suspected child pornography he had not previously detected. Specifically, PO1 IA found 13 images of suspected child pornography in a temporary directory for the Internet browser on Appellant's phone. Analysis indicated the images had been stored in the temporary directory as portable document files (PDFs) on 6 and 7 January 2020.

As a result of this discovery, on 17 November 2022 Appellant's squadron commander preferred the Charge and another specification each of wrongfully possessing and viewing child pornography—the specifications that would ultimately be litigated in *Casillas II* and are the subject of the present appeal. These two specifications were not referred to the *Casillas I* court-martial.

At a pretrial motion hearing for *Casillas I* held on 24 November 2022,[9] the Government attempted to introduce the 13 newly discovered images of alleged child pornography into Appellant's first trial. First, as a result of the "new evidence," the Government sought to modify the language of the *Casillas I*

---

[7] Appellant agreed to speak with the agents and the interview lasted for approximately three hours. However, the details of that interview were not introduced at the court-martial presently under review, *Casillas II*.

[8] AC was subsequently tried by a general court-martial for several offenses. This court previously reviewed the findings and sentence from her court-martial. *United States v. Clark*, No. ACM 40540, 2025 CCA LEXIS 208 (A.F. Ct. Crim. App. 13 May 2025) (unpub. op.).

[9] In the present appeal, this court granted a government motion to attach to the record the verbatim transcript of a portion of this hearing from *Casillas I*. Some of the information in this paragraph is derived from this transcript. We find we may consider this material in order to "resolv[e] issues raised by materials in the record." *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

possession and viewing specifications to allege "visual depictions" rather than "a visual depiction." Trial defense counsel opposed these modifications as major changes to the specifications. *See generally United States v. Simmons*, 82 M.J. 134, 137–41 (C.A.A.F. 2022) (describing the criteria for minor and major changes to specifications). Without awaiting a ruling from the military judge, trial counsel stated the Government "withdr[e]w the requests [to modify] pursuant to the defense objection." Trial counsel then sought to introduce the additional images as relevant evidence of uncharged crimes, wrongs, or other acts pursuant to Mil. R. Evid. 404(b), which the defense also opposed. Ultimately, evidence of these 13 additional images were not admitted at *Casillas I* for any purpose.

On 7 February 2023, while the *Casillas I* court-martial was still pending, the convening authority referred the Charge and two specifications related to the 13 additional images for trial by a second general court-martial that is the subject of this appeal, *Casillas II*.

In early March 2023, at *Casillas I*, a general court-martial composed of officer members convicted Appellant, contrary to his pleas, of a total of four charges and 19 specifications, including the aforementioned specifications of wrongfully possessing and wrongfully viewing child pornography on his iPhone XR. On 5 March 2023, the court members in *Casillas I* sentenced Appellant to confinement for two years, reduction to the grade of E-4, forfeiture of all pay and allowances (suspended and subject to remission after six months), and a reprimand.

*Casillas II* proceeded to trial in June 2023, where a panel of officer members convicted Appellant of both specifications and the Charge. On 26 June 2023, the court members in *Casillas II* sentenced Appellant to four years and 11 months of confinement, reduction to the grade of E-1, and a reprimand.

## II. DISCUSSION

### A. Double Jeopardy

#### 1. Additional Background

According to the record before us, in *Casillas I* the members found Appellant guilty of, *inter alia*, the following two specifications alleging violations of Article 134, UCMJ:[10]

Charge I, Specification 2:

---

[10] The following specifications were included in a copy of the entry of judgment from *Casillas I*, which is included as an appellate exhibit in the record of trial of *Casillas II*.

> Did, within the Republic of Korea, between on or about 1 December 2019 and on or about 24 March 2020, within an iPhone XR, knowingly and wrongfully possess child pornography, to wit: a visual depiction of minors, or what appears to be minors, engaging in sexually explicit conduct, and that said misconduct was of a nature to bring discredit upon the armed forces.[11]

Additional Charge and Specification:

> Did, at an unknown location, between on or about 1 December 2019 and on or about 24 March 2020, within an iPhone XR, knowingly and wrongfully view child pornography, to wit: a visual depiction of minors, or what appear to be minors, engaging in sexually explicit conduct, and that said conduct was of a nature to bring discredit upon the armed forces.

In *Casillas II*, which is the subject of the present appeal, the members found Appellant guilty of the following two specifications in violation of Article 134, UCMJ:

Specification 1 of the Charge:

> Did, within the Republic of Korea, between on or about 1 December 2019 and on or about 18 March 2020, knowingly and wrongfully possess child pornography, to wit: visual depictions of a minor, or what appears to be a minor, engaging in sexually explicit conduct, and that said conduct was of a nature to bring discredit upon the armed forces.

Specification 2 of the Charge:

> Did, within the Republic of Korea, between on or about 1 December 2019 and on or about 18 March 2020, knowingly and wrongfully view child pornography, to wit: visual depictions of a minor, or what appears to be a minor, engaging in sexually explicit conduct, and that said conduct was of a nature to bring discredit upon the armed forces.

During a motions hearing for *Casillas II*, the military judge[12] confirmed with counsel for both parties that the 13 images of alleged child pornography at issue in *Casillas II* were not introduced in evidence in *Casillas I*, either for

---

[11] According to the record before us, this specification was amended slightly after arraignment to the final version reproduced here.

[12] At that point Judge Musselman was the assigned trial judge for *Casillas II*; he was not involved in *Casillas I*.

findings or sentencing. Trial defense counsel further agreed with trial counsel that the defense in *Casillas I* had successfully opposed the Government's efforts to introduce those images in the first court-martial. The military judge then commented, "[T]he obvious reason I'm asking these questions is, right, is double jeopardy concerns. My understanding is if the parties have any concerns with any double jeopardy aspects of this court-martial they'll bring it to my attention via appropriate motion." The Defense did not file a motion or object based on Appellant's rights against double jeopardy at any point during *Casillas II*.

At trial in *Casillas II*, the Government called PO1 IA, the DC3 forensic analyst who examined Appellant's phone. Through PO1 IA, the Government introduced evidence that the PDFs containing the 13 images of suspected child pornography at issue were stored in the Internet browser temporary directory in Appellant's iPhone XR on 6 and 7 January 2020.

During the present appeal, this court granted a government motion to compel declarations from Appellant's trial defense counsel, Major (Maj) JB and Maj AM,[13] addressing Appellant's claims of ineffective assistance of counsel. Both counsel provided responsive declarations which are attached to the record. Both counsel indicated there was an intentional decision not to raise the issue of double jeopardy during *Casillas II*. Maj JB stated, *inter alia*, "[t]here was a concern that in *Casillas II*, if [the Defense] filed a motion to dismiss for double jeopardy, we would lose all credibility with the Judge" because Appellant had previously resisted the introduction of the images in *Casillas I*. In a similar vein, Maj AM stated it would have "felt deceptive" and unethical to raise double jeopardy at *Casillas II* after the defense successfully excluded the 13 additional images from *Casillas I*. In addition, both trial defense counsel expressed doubt that such a double jeopardy motion would be successful with regard to the specification of unlawfully viewing child pornography, and therefore a second court-martial could not be avoided even if the Defense successfully moved to dismiss the specification of unlawful possession.

### 2. Law

#### a. Standard of Review and Waiver

In general, double jeopardy is a question of law that appellate courts review de novo. *United States v. Driskill*, 84 M.J. 248, 252 (C.A.A.F. 2024) (citation omitted). However, an appellant's failure to preserve an issue at trial raises the question whether the appellant has forfeited or waived the issue on appeal. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017). "Whereas

---

[13] Maj JB represented Appellant at both courts-martial; Maj AM represented Appellant only at *Casillas II*.

forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (additional citation omitted).[14] Appellate courts review forfeited issues for plain error; an effective waiver leaves no error to correct on appeal. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (additional citation omitted). Plain error occurs where "(1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted). Where an error is of constitutional dimensions, an appellate court may not affirm the result unless the error was harmless beyond a reasonable doubt. *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004). Whether an appellant has waived or forfeited an issue is also a legal question we review de novo. *United States v. Schmidt*, 82 M.J. 68, 72 (C.A.A.F. 2022).

"When constitutional rights are at issue, we have applied a presumption against finding waiver." *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020) (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)). "A waiver of a constitutional right is effective if it 'clearly established that there was an intentional relinquishment of a known right.'" *Jones*, 78 M.J. at 44 (quoting *United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011)).

Under the applicable version of Article 66, UCMJ, 10 U.S.C. § 866, for cases involving offenses that occurred prior to 1 January 2021, a Court of Criminal Appeals (CCA) has "special power . . . to revise a case notwithstanding the [appellant's] failure to preserve the objection at trial." *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018). In such cases, the CCAs have a "unique statutory responsibility . . . to affirm 'only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.'" *Id*. at 442–43 (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (quoting Article 66(c), UCMJ)). In applicable cases, CCAs have discretion to determine the circumstances under which they will exercise their Article 66, UCMJ, authority to pierce waiver or forfeiture to address an underlying error of law. *See id*. at 443 (quoting *Quiroz*, 55 M.J. at 338).

### b. Child Pornography Offenses Under Article 134, UCMJ

In order to convict Appellant of wrongfully possessing child pornography in violation of Article 134, UCMJ, the Government was required to prove: (1) Appellant knowingly and wrongfully possessed child pornography, and (2) under

---

[14] Waiver may also occur by operation of law. *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018).

the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 95.b.(1). Similarly, in order to convict Appellant of wrongfully viewing child pornography, the Government was required to prove: (1) Appellant knowingly and wrongfully viewed child pornography, and (2) under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See id.* For purposes of Article 134, UCMJ, "'Child pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4).

> Visual depiction includes any developed or undeveloped photograph, picture, film, or video; any digital or computer image, picture, film, or video made by any means, including those transmitted by any means including streaming media, even if not stored in a permanent format; or any digital or electronic data capable of conversion into a visual image.

*MCM*, pt. IV, ¶ 95.c.(11).

In *United States v. Forrester*, the United States Court of Appeals for the Armed Forces (CAAF) commented on the definitions of "child pornography" and "visual depiction" found in Part IV of the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), which are nearly identical to those definitions quoted above applicable to Appellant's case. 76 M.J. 479, 486 (C.A.A.F. 2017). The CAAF explained:

> By defining "[c]hild [p]ornography" as "*material* that *contains*" illicit visual depictions, . . . pt. IV, para. 68b.c.(1) [(2012 *MCM*)] prohibits knowing and conscious possession of the physical media or storage location "that contains" the offensive images. Because pt. IV, para. 68b defines "[c]hild [p]ornography" not as images but "material[s]" that contain them, it matters not that the images extant on each material listed in the bill of particulars were visually similar or identical for each count of possession. Under the plain language of pt. IV, para. 68b, [the a]ppellant completed the offense of possession each time he knowingly possessed, directly or constructively, a distinct "material"—which includes [the a]ppellant's HP laptop, Seagate hard drives, and Google e-mail account—that contained visual depictions of child pornography. As such, [the a]ppellant's possession of each distinct material reflected a discrete and separately punishable unit of possession.

*Id.* (first, second, fourth, fifth, and sixth alterations in original) (citations omitted); *see also United States v. Mobley*, 77 M.J. 749, 751–52 (A. Ct. Crim. App. 2018) (quoting *Forrester*, 76 M.J. at 481) ("[A]s the offense of possessing child pornography is tied to the material that contains illicit images, it is not tied . . . 'to the quantity or variety of visual depictions.' . . . [T]he computer—and not the individual videos or still pictures—constitutes the allowable 'unit of prosecution . . . .'").

### c. Double Jeopardy

"No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; *see also* Article 44(a), UCMJ, 10 U.S.C. § 844(a) ("No person may, without his consent, be tried a second time for the same offense."). "The Double Jeopardy Clause prohibits 'multiplicitous prosecutions . . . [i.e.,] when the [G]overnment charges a defendant twice for what is essentially a single crime.'" *Forrester*, 76 M.J. at 484–85 (omission and first alteration in original) (quoting *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012)).

Applying the prohibition on double jeopardy under the UCMJ "requires multiple steps." *Driskill*, 84 M.J. at 252. "One step is determining whether the accused has been 'twice put in jeopardy' or, stated differently, 'tried twice.'" *Id.* In general, "jeopardy attaches pursuant to Article 44(a), UCMJ, 'when evidence is introduced.'" *Id.* (quoting *United States v. Easton*, 71 M.J. 168, 172 (C.A.A.F. 2012)).

"Another step in applying the prohibitions against double jeopardy is determining whether the accused is truly being tried twice 'for the same offense.'" *Id.* When the alleged misconduct has been charged under "different statutory provisions, this step requires courts to look closely at the elements of each of the alleged offenses." *Id.* "[I]f two offenses have the same elements, those offenses are the 'same offence' and 'double jeopardy bars . . . successive prosecution.'" *United States v. Rice*, 80 M.J. 36, 40 (C.A.A.F. 2020) (quoting *United States v. Dixon*, 509 U.S. 688, 696 (1993)). However, the CAAF has clarified that "only some 'differences [in the elements] are valid ones when determining what constitutes the same offense for purposes of a double jeopardy analysis involving Article 134, UCMJ.'" *Driskill*, 84 M.J. at 253 (quoting *Rice*, 80 M.J. at 43).

In addition to determining whether the statutory provisions in question legally constitute the "same offense" for double jeopardy purposes, courts must also consider whether the accused's conduct at issue factually constitutes the same offense. "The double jeopardy prohibition applies only where 'the same act or transaction' is involved." *Rice*, 80 M.J. at 40 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)) (additional citations omitted); *see also*

*United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019) ("[W]e determine whether the charges are based on separate acts. If so, the charges are not multiplicious because separate acts may be charged and punished separately."). "To resolve this 'species' of multiplicity, the Court 'must first determine the "allowable unit of prosecution," . . . which is the *actus reus* of the defendant.'" *Forrester*, 76 M.J. at 485 (quoting *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007)).

"A bill of particulars may be amended at any time, subject to such conditions as justice permits." Rule for Courts-Martial (R.C.M.) 906(b)(6). "A bill of particulars should not be used . . . to restrict the Government's proof at trial." R.C.M. 906(b)(6), Discussion; *see also United States v. Sudds*, No. ACM 39024, 2017 CCA LEXIS 574, at *21 (A.F. Ct. Crim. App. 23 Aug. 2017) (unpub. op.) (citing R.C.M. 906(b)(6), Discussion).

### d. Statutory Interpretation

"[I]n all statutory construction cases, we begin with the language of the statute." *United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). In the absence of a statutory definition, the plain language of a statute will control unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (citations omitted). "Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Ambiguity should be resolved in favor of lenity. *United States v. Murphy*, 74 M.J. 302, 311 (C.A.A.F. 2015) (citing *Cleveland v. United States*, 531 U.S. 12, 25 (2000)) (additional citations omitted).

"The President has broad power under Article 36(a), UCMJ, [10 U.S.C. § 836(a),] to issue '[p]retrial, trial, and post-trial procedures' in the *MCM*." *United States v. Stradtmann*, 84 M.J. 378, 380 (C.A.A.F. 2024) (alteration in original) (quoting 10 U.S.C. § 836(a) (2012 *MCM*)). Appellate courts "are not bound by the President's interpretation of the elements of substantive offenses." *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (citation omitted). However, the President's "interpretation and 'listing of offenses under Article 134, UCMJ, is *persuasive* authority to the courts.'" *Forrester*, 76 M.J. at 395–96 (quoting *United States v. Jones*, 76 M.J. 479, 485 (C.A.A.F. 2010)). "[W]hen the President's narrowing construction of a statute does not contradict the express language of a statute, it is entitled to some deference, and we will not normally disturb that construction." *Wilson*, 76 M.J. at 7 (citations omitted).

**3. Analysis**

Appellant contends his prosecution in *Casillas II* for possessing and viewing child pornography as alleged in Specifications 1 and 2 of the Charge violated the prohibition against double jeopardy. Our analysis of this issue begins with determining whether Appellant waived this issue at his court-martial.

### *a. Waiver*

The Government contends Appellant waived his double jeopardy argument by failing to file a motion or raise an objection on that basis at his second court-martial; Appellant contends he merely forfeited the issue and this court should review for plain error. In spite of the presumption against finding waiver of constitutional rights, *see Blackburn*, 80 M.J. at 209, we agree with the Government on this point. Several considerations lead us to the conclusion that there "clearly . . . was an intentional relinquishment of a known right" to contest this issue at trial. *Jones*, 78 M.J. at 44.

First, the circumstances surrounding the preferral and referral of the Charge and specifications in *Casillas II* plainly raised the issue of whether the 13 newly discovered images of alleged child pornography on Appellant's iPhone XR were included in the misconduct charged in *Casillas I*. As Maj JB explained in his declaration, the Government initially attempted to introduce these 13 images as part of its proof of offenses charged in *Casillas I*. The defense in *Casillas I* successfully resisted this attempt. This procedural history raised an obvious question for the parties as to whether the possession and viewing of these 13 images were covered by the specifications prosecuted in *Casillas I*.

Second, during a pretrial motions hearing in *Casillas II*, the military judge brought "double jeopardy concerns" to the attention of counsel, and expressed his expectation that "any concerns with any double jeopardy aspects of this court-martial" would be brought to his "attention via appropriate motion." Despite this advice, trial defense counsel raised no double jeopardy concerns during the second court-martial.

Third, the declarations by trial defense counsel indicate Maj AM and Maj JB made a deliberate decision not to challenge the Charge and specifications in *Casillas II* on double jeopardy grounds.

### *b. Piercing Waiver with Respect to Possession (Specification 1)*

However, under the particular circumstances of this case, we find it appropriate to exercise our "special power" under Article 66(d)(1), UCMJ, to pierce Appellant's waiver and address the double jeopardy issue, specifically with respect to Specification 1 of the Charge alleging wrongful possession. *See Hardy*, 77 M.J. at 442. Several considerations lead us to this conclusion.

First, Appellant's assignments of error and trial defense counsel's decision not to defend Appellant's constitutional and statutory rights against double jeopardy raise a concern regarding ineffective assistance and warrant investigation of the merits of the double jeopardy issue, regardless of waiver. In other words, even if we applied waiver to this issue entirely, thorough consideration of Appellant's ineffective assistance of counsel claim would require us to evaluate the merits of a double jeopardy claim in any event.

Moreover, this is not a case where the waived error had only a negligible or questionable impact on the results of Appellant's court-martial. On the contrary, as we discuss below, in light of our superior court's precedent the entire prosecution of Specification 1 represented a violation of Appellant's constitutional and statutory rights, resulting in substantial prejudice. In our view, such errors present an apt occasion for this court to exercise the "special power" given us to uphold the integrity of the system.

Furthermore, and importantly, we find this is not a case where waiver resulted in the issue being inadequately developed for this court to reliably determine the matter on appeal. From the record before us, we know the offenses Appellant was charged with and convicted of in *Casillas I*; we know the offenses he was charged with and convicted of in *Casillas II*; and we know the nature of the evidence at issue in each trial with sufficient clarity, as described below.

For these and other reasons, we will review for plain error whether Appellant's prosecution and conviction for possession of child pornography as alleged in Specification 1 violated his rights against double jeopardy. However, for reasons that will be explained further below, we will not pierce Appellant's waiver of the double jeopardy issue with respect to viewing child pornography as alleged in Specification 2.

### c. Double Jeopardy with Respect to Specification 1

Next we address the applicable steps to determine whether Appellant was erroneously subjected to double jeopardy with respect to Specification 2 of Charge I of *Casillas I* and Specification 1 of the Charge of *Casillas II* (both alleging wrongful possession of child pornography).

We begin with the question of whether Appellant has been "tried twice" for double jeopardy purposes. We find that he has. In general, jeopardy attaches once evidence is introduced at trial. *See Driskill*, 84 M.J. at 252 (citation omitted). Not only was evidence introduced at trial as to each of these specifications, but Appellant was convicted and sentenced for each.

Next we consider whether the possession specifications from *Casillas I* and *Casillas II* represent the "same offenses." One aspect of this inquiry involves determining whether each offense requires proof of an element the other does

not. *See Rice*, 80 M.J. at 40 (citation omitted). In this case, the answer is that there are no distinct elements, because the same statutory offenses of possession and viewing of child pornography under Article 134, UCMJ, have been alleged in both *Casillas I* and *Casillas II*. Thus the elements, as expounded by the President in paragraph 95.b.(1) at Part IV of the *MCM*, are the same.

This leads us to the critical question—whether Appellant was tried and punished twice for the same "act or transaction." *See Rice*, 80 M.J. at 40 (citation omitted). This requires a determination of the "allowable unit of prosecution" for these possession offenses, *see Forrester*, 76 M.J. at 485 (citations omitted), as well as examination of the specifications and evidence in question.

Beginning with the former, we note the CAAF in *Forrester* emphasized that the operative definition defines "child pornography" as the "*material* that *contains*" the illicit images, rather than the images themselves. *Id.* at 486. Thus in *Forrester* it was permissible for the Government to prosecute separate specifications for each of the appellant's devices that contained illicit images, regardless of whether those images were the same or different from device to device, because it was the possession of the "material" containing the images (*i.e.*, the device) that represented each offense. *Id.* However, the apparent corollary of this reasoning is that contemporaneous possession of multiple illicit images in the same "material" represents a single offense of possession of child pornography, because "child pornography" is defined as the "material" (*e.g.*, the device containing the images) rather than each image itself.

Now we turn to the possession specifications and evidence at issue in this case. Specification 2 of Charge I in *Casillas I* alleged, *inter alia*, Appellant possessed child pornography "within an iPhone XR" while in the Republic of Korea between on or about 1 December 2019 and on or about 24 March 2020. Specification 1 of the Charge in *Casillas II* alleged, *inter alia*, Appellant possessed child pornography while in the Republic of Korea between on or about 1 December 2019 and on or about 18 March 2020. Although the specification in *Casillas II* did not allege a specific device within which Appellant possessed child pornography, from the record it is abundantly clear the images at issue were contained on the same iPhone XR that OSI seized from Appellant as had been alleged in *Casillas I*. Moreover, the alleged geographical location of the crime was the same in each specification; the alleged date of the offense in *Casillas I* completely overlapped the alleged date in *Casillas II*; and the evidence indicated the possession alleged in *Casillas II* occurred on 6 and 7 January 2020, well within that charged time frame. In light of the *MCM* definition of "child pornography" as the material that contains the images, as explained in *Forrester* and described above, we reach the conclusion that in *Casillas II* Appellant was prosecuted again for the same act or transaction of possessing child pornography of which he was convicted in *Casillas I*: knowingly and

wrongfully possessing an iPhone XR that contained visual depictions of a minor, or what appears to be a minor, engaging in sexually explicit conduct, while in the Republic of Korea between on or about 1 December 2019 and on or about 24 March 2020.[15] Put another way, the 13 images from Appellant's phone that were at issue in *Casillas II* were additional evidence that Appellant committed the same offense of possession charged in *Casillas I*, rather than a different offense.[16]

In spite of *Forrester*, the Government argues that "[s]imply put, possessing . . . different images of child pornography constitute[s] separate offenses." We are not persuaded. Notably, in support of its argument, the Government cites three federal civilian cases which are not bound by the *MCM* definition of child pornography nor the CAAF's holding in *Forrester*. *See United States v. Fall*, 955 F.3d 363 (4th Cir. 2020); *United States v. Benoit*, 713 F.3d 1, 16 (10th Cir. 2013); *United States v. Rector*, 2013 U.S. Dist. LEXIS 156937 (W.D. Ark. 1 Nov. 2023). These references are also unpersuasive in other ways. For example, it is true that *Benoit* states, as the Government quotes, the doctrine of multiplicity "has no application in cases in which two counts are based on two distinct sets of conduct." 713 F.3d at 16 (citation omitted). However, this begs the question of what the charged conduct is; in Appellant's case, given the applicable law as described above, it is possessing illicit images on his iPhone XR.[17] *Fall* found that a count of possessing child pornography in August 2016 and three

---

[15] The dissenting opinion states: "The majority opines that because the facts of the case as presented in this, Appellant's second trial, indicate that his viewing and possession occurred on his iPhone XR, that Appellant was already prosecuted for *any* possession of child pornography during the charged timeframe at issue." (Emphasis added). With due respect for the dissent's interpretation, we do not opine that Appellant was already prosecuted for all possession of child pornography that occurred during the charged time frame. As we have described, a necessary step in our double jeopardy analysis is to determine whether the two possession specifications at issue here involved not only the same elements, but "the same act or transaction." *Rice*, 80 M.J. at 40 (citation omitted). In this case, the possession specifications from *Casillas I* and *Casillas II* both involved the act of possessing illicit images on the same iPhone XR. Nothing in our opinion stands for the proposition that, after *Casillas I*, double jeopardy principles would have barred the Government from prosecuting possession of child pornography as to *other* devices or media during the same time frame.

[16] We find it of no consequence for double jeopardy purposes that the bill of particulars in *Casillas I* did not identify the 13 images prosecuted in *Casillas II*. A bill of particulars is not part of the elements of a charged offense and generally does not limit the Government's proof at trial. *See* R.C.M. 906(b)(6), Discussion.

[17] *Benoit* goes on to hold the appellant was improperly convicted of both receipt and possession of child pornography "based on the same conduct," in violation of the Double Jeopardy Clause. 713 F.3d at 18.

counts of *receiving* child pornography were not multiplicious where the "convictions involve[d] different conduct on different dates." 955 F.3d at 373. Similarly, *Rector* involved comparing one count of possessing an image of child pornography with four counts of *receiving* child pornography, each on different dates. *Rector*, 2013 U.S. Dist. LEXIS 156937 at *30–31. *Receipt* of child pornography is not at issue in Appellant's case, and we draw no conclusions as to how the *MCM* definition of child pornography as the "material" that "contains" the illicit images might apply to such an offense. *Cf. Planck*, 493 F.3d at 505 (explaining that receipt and distribution of child pornography is distinguishable from possession under 18 U.S.C. § 2252(a)(2) in that "each separate receipt of child pornography violates the statute"). Moreover, other federal circuit decisions support the view that where an accused is charged with possessing a device containing child pornography, possession of the device constitutes the offense. *See, e.g., United States v. Bopp*, 79 F.4th 567, 572 (5th Cir. 2023) ("[18 U.S.C. § 2252A(a)(5)(B)] criminalizes possession of material containing child pornography. The phone was that 'material,' no matter whether it contained one image or twenty thousand."); *see also United States v. Thomas*, __ F.4th __, 2025 U.S. App. LEXIS 463, at *4–5 (7th Cir. 2025) (following *Bopp*).

Having found error, we further find the error was "plain and obvious" as viewed on appeal. *Jones*, 78 M.J. at 44 (citation omitted). This is no criticism of the military judges who presided over the motions hearings and trial in *Casillas II*, who were not involved in *Casillas I*, and to whom the Defense never raised any double jeopardy objection even when specifically asked about double jeopardy. However, "it is enough that an error be 'plain' at the time of appellate consideration," *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)), and the Government was fully aware of the circumstances of *Casillas I*.

Finally, we find the error materially prejudiced Appellant's substantial rights. Such prejudice would appear obvious, given that Appellant was not only subjected to a second trial, but received additional convictions and a sentence to a further four years and 11 months in confinement, reduction from the rank of E-4 to E-1, and a reprimand. Yet the Government contends "error, assuming any, was harmless beyond a reasonable doubt." The Government reasons "Appellant had the opportunity to endure only one court-martial but his choice to keep the images out of *Casillas I* left the Government with the viable option to pursue a second court-martial." However, as explained above, a second court-martial was *not* a viable option, at least for Specification 1 of the Charge as drafted. The Government's argument essentially relies on the flawed premise that there was no unfair prejudice because there was no error, but that was not the case.

For the foregoing reasons, we conclude the finding of guilty as to Specification 1 of the Charge must be set aside, and the specification dismissed.

### d. Waiver with Regard to Viewing (Specification 2)

Unlike the possession offense alleged in Specification 1, we do not find it appropriate to pierce Appellant's waiver with respect to the viewing offense alleged in Specification 2 of the Charge. Our superior court's decision in *Forrester* specifically addressed units of prosecution with respect to *possession* of child pornography. *Forrester* did not address permissible units of prosecution with respect to *viewing* child pornography.

It is true that the offenses of wrongful possession and wrongful viewing of child pornography under Article 134, UCMJ, as articulated by the President, employ the same definition of "child pornography," meaning the "material" that "contains" the illicit images. However, we are not aware of any decision by the CAAF or any CCA extending the rationale of *Forrester* to viewing. *Cf. Mobley*, 77 M.J. at 751–52 (applying *Forrester* to find separate specifications alleging wrongful possession of videos and still pictures on the same computer "multiplicious for findings"). In addition, given the inherent differences between the act of possession and the act of viewing, we find some reason to question whether the applicable units of prosecution would necessarily be the same. For example, an accused can certainly knowingly and wrongfully possess illicit images on one or more devices without viewing the images. In such a case, there is no substantial difference between knowingly possessing the illicit images and knowingly possessing the devices (*i.e.*, the "material") containing the images. However, if Appellant's iPhone XR, as the "material" containing the illicit images, *was* the "child pornography" for purposes of wrongful viewing under Article 134, UCMJ, would that mean Appellant viewed "child pornography" every time he looked at the phone, regardless of whether any illicit image was visible? Surely not. We appreciate that there may be a valid distinction between, on the one hand, the particular act that constitutes an offense, and on the other hand, an allowable unit of prosecution. In other words, holding that double jeopardy prohibitions forbid the Government from prosecuting multiple specifications of wrongfully viewing child pornography based on images located on the same device does not necessarily mean an accused can be convicted of viewing child pornography for merely looking at a device without seeing the illicit images themselves. Yet it might seem reasonable to make either, (1) each instance of actually knowingly and wrongfully viewing illicit images, or (2) each illicit image knowingly and wrongfully viewed, the basis for a prosecutable offense of wrongful viewing.

We do not definitively resolve this question one way or the other. For purposes of this opinion, the salient point is that *Forrester* compels a conclusion that Appellant's repeated prosecution for *possessing* child pornography on the

same device violated his rights against double jeopardy, but *Forrester* does not compel the same conclusion with respect to *viewing* child pornography. For this reason, we find it appropriate to pierce Appellant's waiver to correct the constitutional error with respect to possession, but we do not find it appropriate to pierce his waiver with respect to viewing. *See Hardy*, 77 M.J. at 443 (quoting *Quiroz*, 55 M.J. at 338) (noting the CCAs had "authority to determine the circumstances, if any, under which [they] would apply waiver or forfeiture").

## B. Ineffective Assistance of Counsel – Double Jeopardy

### 1. Additional Background

As described above in relation to issue (1), during a motions hearing the military judge confirmed with counsel for the parties that the 13 images at issue in *Casillas II* were not introduced in *Casillas I* for any purpose. The military judge then expressed, "My understanding is if the parties have any concerns with any double jeopardy aspects of this court-martial they'll bring it to my attention via appropriate motion." Trial defense counsel did not raise any motion or objection related to double jeopardy at any point during *Casillas II*. For the reasons stated above in relation to issue (1), we find Appellant waived his double jeopardy objections with respect to Specifications 1 and 2 of the Charge.

As also stated above in relation to issue (1), on the Government's motion, this court compelled declarations from Appellant's trial defense counsel, Maj JB and Maj AM, responsive to Appellant's claims of ineffective assistance of counsel.

Maj JB represented Appellant at *Casillas I* and *Casillas II*. In his declaration to this court, he stated, *inter alia*, the defense in *Casillas I* opposed the introduction of the 13 newly discovered images because trial defense counsel believed it was "the best hope of obtaining an acquittal in *Casillas I*." Although this strategy did not obtain an acquittal, it resulted in "a very favorable sentence" considering the offenses at issue in that case. Maj JB further stated that at *Casillas II*, there was a "concern" that because the defense had opposed introducing the 13 additional images in the first court-martial, *Casillas I* might potentially be "re-open[ed]" if the Defense in *Casillas II* made the "incongruent" argument that the prosecution in *Casillas II* was barred due to double jeopardy. Maj JB further noted the CAAF's holding in *United States v. Forrester*, 76 M.J. 479 (C.A.A.F. 2017), analyzed above, only related to *possession* of child pornography, and the same double jeopardy principles might not apply to the allegation of wrongfully *viewing* child pornography given that "the *actus reus* of viewing each image is different than simply possessing a collection of images." In summary, Maj JB, asserted, "Based on the concerns above about the case posture as well as the potential impact to *Casillas I* and our

understanding of the unit of prosecution as defined by the [*Manual for Courts-Martial*] for viewing, we assessed it was riskier to file the motion than not. Even if the motion were successful, [Appellant] would have likely faced a second court-martial for viewing the PDF files . . . ."

Maj AM represented Appellant at *Casillas II*, but not at *Casillas I*. In his declaration to this court, he stated, *inter alia*,

> While not judicially estopped from making the argument, I viewed objecting to joinder of the PDFs to Casillas I (on grounds that they were legally distinct from the rest of the contraband) only to object to the PDFs in Casillas II (on the grounds that they were covered by the charging scheme in Casillas I) as dangerously close to misleading the Court. . . . To reverse course in Casillas II out of expediency . . . felt deceptive towards the court, which precluded me from ethically filing such a motion.

Maj AM continued, similarly to Maj JB, that even if the Defense successfully blocked the prosecution of Specification 1 alleging wrongful possession on double jeopardy grounds, he believed *Casillas II* "would have nonetheless proceeded to trial" because the unit of prosecution *Forrester* established with respect to possession did not apply to the offense of wrongfully viewing child pornography.

**2. Law**

The Sixth Amendment[18] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence as stated in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are the appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did trial defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if trial defense counsel were deficient, is there "a reasonable probability that, absent the errors," there would have been a different result? *Id.*

---

[18] U.S. Const. amend. VI.

(alteration and omission in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689) (additional citation omitted). "Scrutiny of counsel's performance should be highly deferential." *United States v. Metz*, 84 M.J. 421, 428 (C.A.A.F. 2024) (citing *Strickland*, 466 U.S. at 689). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475. With respect to prejudice, a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome" of the trial. *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 694) (additional citation omitted).

For a description of the applicable law as to the elements of the charged offenses and double jeopardy principles, *see* section II.A.2, *supra*.

### 3. Analysis

As an alternative argument to his claim that the prosecution of Specifications 1 and 2 of the Charge were barred due to double jeopardy, analyzed above, Appellant contends he received ineffective assistance of counsel when his trial defense counsel failed to move to dismiss on double jeopardy grounds in light of *Forrester*.

As an initial matter, in light of our resolution of issue (1), we find Appellant's argument with respect to Specification 1 is moot and do not address it further.

With respect to Specification 2, we find Appellant has not overcome the strong presumption that trial defense counsel's performance was "within the wide range of reasonable professional assistance." *Datavs*, 71 M.J. at 424 (citation omitted). Applying the "highly deferential" standard applicable when reviewing claims of ineffective assistance, *see Metz*, 84 M.J. at 428, we find there is a reasonable explanation as to why trial defense counsel did not challenge Specification 2 on double jeopardy grounds, and their performance with respect to Specification 2 did not fall measurably below the level of performance ordinarily expected of fallible lawyers. *See Gooch*, 69 M.J. at 362 (citation omitted). As discussed *supra* in relation to issue (1), and as Maj JB and Maj AM explained to some extent in their declarations, *Forrester* does not directly apply, and so far as we can discern has not been applied, to the offense of wrongfully viewing child pornography. To be clear, as stated *supra*, we do not hold that *Forrester* does not apply to viewing child pornography in violation of Article 134, UCMJ; given how the Government elected to charge this case,

zealous and enterprising trial defense counsel might well have made the argument that it did apply. However, given the current state of the law, we do not find trial defense counsel's performance measurably below the standard expected of reasonably competent but imperfect counsel with respect to Specification 2.[19] Accordingly, we find Appellant has failed to demonstrate he is entitled to relief for ineffective assistance of counsel.

## C. Factual Sufficiency

### 1. Additional Background

During the findings portion of Appellant's court-martial, the Government called three witnesses and introduced several exhibits, including reports analyzing the contents of Appellant's phone and containing the 13 images depicting alleged child pornography that are the subject of the charged offenses in the instant case, *Casillas II*.

Special Agent (SA) EP of the OSI described how the investigation into Appellant originated with NCMEC contacting the OSI on 6 February 2020 regarding emails then-MSgt AC sent Appellant on or about 7 January 2020 which contained suspected child pornography.[20] This led to the OSI seizing Appellant's phone on 24 March 2020. It also led the OSI to discover two emails from Appellant to AC describing sexual fantasies involving the sexual exploitation of children, which were introduced at Appellant's trial.

AC, who had already been prosecuted at that point,[21] testified pursuant to a grant of immunity that she had known Appellant since 2012 and that they shared a child together. AC created the email accounts that were the subject of the NCMEC report and OSI investigation, which she and Appellant used to communicate with each other while they were stationed at different bases. She confirmed Appellant sent the two emails containing sexual fantasies involving children. She also confirmed an image of child pornography had been sent from

---

[19] To be clear, we are not persuaded by trial defense counsel's concerns that raising double jeopardy at *Casillas II* would have been deceptive or unethical, nor are we persuaded by any concern that doing so would have jeopardized what the Defense considered a favorable sentence at *Casillas I*. We are more concerned that trial defense counsel failed to defend Appellant's constitutional and statutory rights as to being tried a second time for wrongful possession of child pornography on his iPhone XR, in light of *Forrester*, but as stated *supra* any error in that respect is mooted by this court's resolution of issue (1).

[20] The images associated with these emails were not the subject of the charged offenses in *Casillas II*.

[21] *See* n.8, *supra*.

her email to Appellant's,[22] although she claimed she had not sent that particular email and her account had been "hacked."

PO1 IA, the DC3 analyst who examined Appellant's phone, testified as an expert in digital forensics. PO1 IA testified he found 13 images of suspected child pornography in a temporary directory for the Internet browser on Appellant's phone. PO1 IA explained:

> The temporary directory is utilized by the application to preload data on the pages that you are viewing as well as any kind of documents that you had opened up within the browser. This is done to help make the user experience easier. So that way, as you scroll through the page the image is already loaded for you
>
> . . . .

He further explained that, in addition to opening documents while browsing the Internet, such files could be saved in the temporary directory if they were made attachments to an email where the user was accessing his email through the web browser. PO1 IA testified his analysis indicated the images had been stored in the temporary directory as portable document files (PDFs) at various times on 6 and 7 January 2020. PO1 IA was not able to find the web browser history for Appellant's phone for the period from November 2019 to February 2020.

The military judge instructed the court members they could consider evidence that Appellant possessed and viewed uncharged images of child pornography and child erotica, and that Appellant sent AC the two emails describing fantasies involving sexual exploitation of children, as evidence: (1) of Appellant's motive to view child pornography; (2) Appellant knowingly and wrongfully viewed child pornography as charged; and (3) he did not accidentally or mistakenly view it.

**2. Law**

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of . . . factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

---

[22] This image was at issue in *Casillas I*; it was not part of the child pornography alleged in Specifications 1 and 2 of the Charge in *Casillas II*.

"The [applicable[23]] test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (third alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018)). "The [G]overnment is free to meet its burden of proof with circumstantial evidence." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citations omitted).

As described above in our analysis of the double jeopardy issue, in order to convict Appellant of wrongfully viewing child pornography, the Government was required to prove: (1) Appellant knowingly and wrongfully viewed child pornography, and (2) under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 95.b.(1). "'Child pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4). A "visual depiction" includes, *inter alia*, "any digital or computer image, picture, film, or video made by any means . . . even if not stored in a permanent format; or any digital or electronic data capable of conversion into a visual image." *MCM*, pt. IV, ¶ 95.c.(11).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive, intent, and absence of mistake or accident. Mil. R. Evid. 404(b)(2).

**3. Analysis**

The Government presented strong circumstantial evidence that Appellant knowingly and wrongfully viewed child pornography on 6 and 7 January 2020, as charged in Specification 2. The 13 images at issue were located in a

---

[23] Because the offense for which Appellant was convicted occurred before 1 January 2021, statutory changes to our factual sufficiency review under Article 66, UCMJ, 10 U.S.C. § 866, that came into effect on that date do not apply in this case. *See generally United States v. Harvey*, 85 M.J. 127, 129–30 (C.A.A.F. 2024).

temporary folder on Appellant's phone. So far as the record indicates, only Appellant used the phone during the relevant period. As PO1 IA explained, the plausible explanation for these files being in the temporary folder was that Appellant used the browser to access locations where these images were, or perhaps accessed email or prepared to send email through his web browser that had these files attached. That these files were saved in the folder at several different times over the course of approximately one day tended to indicate a pattern of activity rather than a single event that populated all 13 images in the folder at once. In addition, that Appellant had received another image of child pornography, and that he had shared sexual fantasies involving children with AC, tended to indicate Appellant had some interest in the sexual exploitation of children, and tended to reduce the likelihood that he viewed images of child pornography by mistake or accident. *See* Mil. R. Evid. 404(b).

Appellant does not contend the 13 images did not contain child pornography, or that anyone else might have used his phone during the relevant period, or that the charged conduct was not service-discrediting. Instead, Appellant contends the Government failed to prove Appellant knowingly and wrongfully viewed the images in question. Appellant argues that evidence these images were in the temporary folder does not prove they were viewed on the phone's screen. He contends that, based on PO1 IA's testimony, these images were located in the temporary folder because they were "preloaded" there from Internet sites, without Appellant "clicking" on the images or otherwise necessarily specifically intending to access or view them. However, we do not understand PO1 IA's testimony to foreclose the possibility that Appellant did, in fact, "click" on or otherwise intentionally engage with these images. For the reasons stated above, we find the circumstantial evidence of Appellant's guilt is strong. Having weighed the evidence in the record of trial, and having made allowances for the fact that the trial judge personally observed the witnesses, we find the evidence factually sufficient. *See Rodela*, 82 M.J. at 525.

**D. Court Member Selection**

**1. Additional Background**

On 7 February 2023, the convening authority issued a special order appointing 16 officer members to Appellant's court-martial. The convening authority issued a second order on 7 June 2023, excusing nine of the officer members and appointing nine other officers and eight enlisted members to the court-martial. On 22 June 2023, the convening authority appointed seven additional officer members to the court-martial.

Included with the record of trial are the lists of potential court-martial members provided to the convening authority for consideration and selection. These documents include each individual's name, rank, unit of assignment,

and duty station. Neither the sex nor race of the individuals was expressly indicated on these documents. The convening authority indicated the members he selected to serve on the court-martial by writing his initials next to the individual's name. The record indicates the convening authority was also provided with "court member data sheets" regarding the potential court members submitted for consideration. However, these "court member data sheets" are not included in the record of trial.

The staff judge advocate's pretrial advice to the convening authority, dated 7 February 2023, included the following: "In accordance with Article 25, UCMJ[, 10 U.S.C. § 825], members detailed to a court-martial shall be those who you determine are best qualified by reason of their age, education, training, experience, length of service, and judicial temperament." A 7 June 2023 memorandum from the staff judge advocate to the convening authority providing advice on the selection of replacement court members included identical language on the Article 25, UCMJ, selection criteria. Neither memorandum specifically commented on considering either race or sex in selecting court members.

Appellant did not object to the court-martial selection process prior to filing his assignments of error with this court.

On appeal, Appellant moved to attach "Abbreviated Court/Board Member Data Sheets" (data sheets) and Single Unit Retrieval Format summaries (SURFs) containing personal data regarding 31 of the 40 court members who the convening appointed to the court-martial. The SURFs contain information about the court members' "sex" and "race." Appellant contended the convening authority received these data sheets and SURFs prior to selecting members for Appellant's court-martial. This court granted Appellant's motion to attach the data sheets and SURFs.

### 2. Law

Court-martial composition issues not raised at trial are forfeited and reviewed on appeal for plain error. *United States v. King*, 83 M.J. 115, 120–21 (C.A.A.F. 2023), *cert. denied*, 144 S. Ct. 190 (2023). Under the plain error standard of review, the "[a]ppellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *Robinson*, 77 M.J. at 299 (citation omitted). In undertaking a plain error analysis, we "consider whether the error is obvious at the time of appeal, not whether it was obvious at the time of the court-martial." *Harcrow*, 66 M.J. at 159.

"When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best

qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." 10 U.S.C. § 825(e)(2).

In *United States v. Crawford*, the United States Court of Military Appeals (CMA) held the intentional selection of African American servicemembers to serve on courts-martial in order to ensure fair representation of the community was consistent with constitutional guarantees of equal protection. 35 C.M.R. 3, 13 (C.M.A. 1964); *see also United States v. Smith*, 27 M.J. 242, 249 (C.M.A. 1988) ("[A] commander is free to require representativeness in his court-martial panels and to insist that no important segment of the military community -- such as blacks, Hispanics, or women -- be excluded from service on court-martial panels.").

In *Batson v. Kentucky*, the United States Supreme Court held a criminal defendant "ha[s] the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria," and in particular "the Equal Protection Clause[ ] forbids the prosecutor to challenge potential jurors solely on account of their race" through the exercise of peremptory challenges. 476 U.S. 79, 85–86, 89 (1986). Following up on *Batson*, in *J.E.B. v. Ala. ex rel. T.B.* the Court held that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." 511 U.S. 127, 129 (1994).

In *United States v. Jeter*, the CAAF overruled *Crawford* in light of *Batson*, holding "[i]t is impermissible to exclude or intentionally include prospective members based on their race." 84 M.J. 68, 73 (C.A.A.F. 2023). The CAAF explained, "whenever an accused makes a prima facie showing that race played a role in the panel selection process at his court-martial, a presumption will arise that the panel was not properly constituted," which the Government may then attempt to rebut. *Id.* at 70. In *Jeter*, "trial defense counsel challenged the makeup of the panel, citing a 'systematic exclusion of members based on race and gender.' The military judge noted that '[i]t appears that [the panel] is all white men.'" *Id.* at 71 (alterations in original). On appeal, the CAAF found the appellant had made a "prima facie showing that gives rise to a presumption that race was allowed to enter the selection process." *Id.* at 74. In support of this conclusion, the CAAF cited "racial identifiers" that were included in court member questionnaires provided to the convening authority, as well as "other evidence before the [CCA]," and "the command's understandable belief that the *Crawford* case . . . was still good law." *Id.*

In *United States v. Patterson*, No. ACM 40426, 2024 CCA LEXIS 399, at *20–21 (A.F. Ct. Crim. App. 27 Sep. 2024) (unpub. op.), *aff'd on other grounds*, __ M.J. __, No. 25-0073, 2025 CAAF LEXIS 548 (C.A.A.F. 14 Jul. 2025), this court noted "*J.E.B.* essentially put gender on the same constitutional footing as race" with respect to its impermissibility as a criterion for court member selection.

### 3. Analysis

Relying on *Jeter*, Appellant puts forward a similar argument to that made by the appellant in *Patterson*, unpub. op. at *13–23. Appellant contends his court-martial panel was improperly constituted because the convening authority inappropriately considered race and gender in selecting members. Appellant cites the fact that, as in *Jeter*, racial and gender identifiers for prospective court members were provided to the convening authority. He also notes *Jeter* had not yet been decided, and at the time of his court-martial applicable precedent did not prohibit the consideration of race or gender in order to ensure a court-martial panel representative of the military community. In addition, Appellant contends the convening authority's 7 June 2023 order "removed five female officers and four male officers and then added the exact same number of female and male officers," which he contends "demonstrates a deliberate effort to balance the gender composition of the detailed members."

Because Appellant did not object to the court member selection at trial, we review the matter for plain error. *See King*, 83 M.J. at 120–21. We find Appellant fails to demonstrate plain error.

As an initial matter, for purposes of our analysis, we will assume without deciding that in light of *J.E.B.*, *Jeter* prohibits the exclusion or selection of court members on the basis of sex as well as race. *See Patterson*, unpub. op. at *20–21. In addition, as in *Patterson*, we assume for purposes of our analysis that the CAAF's decision in *United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020), does not bar our consideration of the data sheets and SURFs Appellant moved to attach on appeal. *See Patterson*, unpub. op. at *21.

Nevertheless, again as in *Patterson*, "we are not persuaded Appellant has met his burden to demonstrate 'clear' or 'obvious' error in the selection process." *Id.* "[T]he routine provision to the convening authority of professional and personal information including race and gender does not in itself constitute a prima facie showing the convening authority in fact improperly relied on such criteria in selecting members under the plain error standard of review," particularly where the staff judge advocate advised the convening authority to base his selection on the correct Article 25, UCMJ, criteria. *Id.* at *21–22. "We will not presume improper motives from inclusion of racial and gender identifiers on lists of nominees for court-martial duty." *United States v. Loving*, 41 M.J. 213, 285 (C.A.A.F. 1994).[24] As to Appellant's contention that on 7 June 2023 the convening authority suspiciously excused five female and four male officers and replaced them with five female and four male officers,

---

[24] We note *Jeter* did not purport to overrule *Loving*, which *Jeter* cited with evident approval. 84 M.J. at 74.

our review of the record indicates Appellant is in error. According to the data sheets and SURFs Appellant provided, the convening authority replaced five female and four male officers with four female and five male officers. Moreover, we do not find concerning circumstances equivalent to those described by the CAAF in *Jeter* to be present in the record before us. 84 M.J. at 71–74. Under these circumstances, we are not persuaded Appellant has met his burden to make a prima facie showing of improper member selection under the plain error standard of review. Accordingly, we find Appellant is not entitled to relief on this issue.

## E. Redacted Entry of Judgment of *Casillas I*

### 1. Additional Background

As described in section I, *supra*, in *Casillas I* the court-martial convicted Appellant of four charges and 19 specifications, and sentenced him to confinement for two years, reduction to the grade of E-4, forfeiture of all pay and allowances (suspended and subject to remission after six months), and a reprimand.

During presentencing proceedings in *Casillas II*, trial counsel offered a redacted version of the entry of judgment (EoJ) from *Casillas I* into evidence as Prosecution Exhibit 18 (PE 18).[25] In particular, the Government redacted from PE 18 all information relating to Appellant's sentence at *Casillas I*. Trial defense counsel objected to the redactions, citing Mil. R. Evid. 106. In response, trial counsel contended the "courts of appeals have stated it has long been the rule that sentences in other cases cannot be given to court-martial members for comparative purposes," citing *United States v. Barrier*, 61 M.J. 482, 485 (C.A.A.F. 2005). Trial counsel further argued the redacted material included the convening authority's deferment of adjudged forfeitures and waiver of automatic forfeitures, and providing such information regarding post-trial relief would contribute to "all sorts of [Mil. R. Evid.] 403 concerns." Trial defense counsel argued *Barrier* is inapplicable because that case dealt with an appellant comparing his case to the cases of other convicted servicemembers, whereas the sentence from Appellant's own prior court-martial was "a proper matter in aggravation and mitigation to assess [Appellant's] rehabilitative potential."

The military judge overruled the defense objection and admitted PE 18 in its redacted form. He explained:

---

[25] The record contains an unredacted version of the *Casillas I* EoJ in Appellate Exhibit LI.

Regarding [PE] 18, the court has read and analyzed *U.S. v. Barrier*, at 61 M.J. 482, and finds that it is on point. In *Barrier* that military judge gave a *Friedmann*[26] instruction when the appella[nt] decided to put in a comparative sentence in his unsworn. [The CAAF] found the military judge should not have used [sic] his discretion by giving that instruction. *Barrier* cites to *United States vs. Mamaluy*[, 27 C.M.R. 176, 180 (C.M.A. 1959),] where it stated, "Moreover, it has long been the rule of law that the sentences in other cases cannot be given to courts – to court-martial members for comparative purposes." Aside from keeping the court from becoming involved in collateral issues, that principle is founded on the hypothesis that accused persons are not robots to be sentenced by a fixed formula, but rather they are offenders who should be given individualized consideration and punishment.

The court having considered [Mil. R. Evid.] 403 finds the probative value of telling the members the prior sentence on [PE] 18 is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the members specifically in light of *U.S. v. Barrier* and *U.S. v. Mamaluy*[,] [PE] 18 in the submitted redacted format is admitted into evidence.

**2. Law**

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020) (citation omitted). "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts." *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024) (citing *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017)).

In presentencing proceedings, "[t]rial counsel may introduce evidence of prior military or civilian convictions of the accused." R.C.M. 1001(b)(3)(A). "Previous convictions may be proved by any evidence admissible under the Military Rules of Evidence." R.C.M. 1001(b)(3)(C). "Normally, previous convictions may be proved by use of the personnel records of the accused, by the record of the conviction, or by the judgment. *See* R.C.M. 1111 . . . ." R.C.M. 1001(b)(3)(C), Discussion.

---

[26] *See United States v. Friedmann*, 53 M.J. 800 (A.F. Ct. Crim. App. 2000).

Relevant evidence is generally admissible, unless otherwise provided for by law. Mil. R. Evid. 402(a). The military judge may exclude relevant evidence that is otherwise admissible if its probative value is substantially outweighed by a countervailing concern, including *inter alia* confusion of the issues or misleading the members. Mil. R. Evid. 403. "A military judge enjoys 'wide discretion' in applying Mil. R. Evid. 403." *United States v. Harris*, 46 M.J. 221, 225 (C.A.A.F. 1997) (citation omitted). "Where a military judge properly conducts the balancing test under [Mil. R. Evid.] 403, we will not overturn his decision unless there is a clear abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any further part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Mil. R. Evid. 106. However,

> [Mil. R. Evid.] 106 does not allow for the admission of "any other part" of the statement without limit. Rather, those additional portions of the statement must still meet the Mil. R. Evid. 401 relevance standard . . . and be required "in fairness," suggesting that Mil. R. Evid. 403 could still bar statements that are not reliable and unnecessary to place the statement in proper context.

*United States v. Rosales*, 74 M.J. 702, 707 (A.F. Ct. Crim. 2015) (citations omitted).

In *Barrier*, the appellant's unsworn presentencing statement to the court members included a reference to the term of confinement another Airman purportedly received in an apparently unrelated drug abuse case. 61 M.J. at 483. The military judge provided the members a lengthy instruction advising them, *inter alia*, "the disposition of other cases is irrelevant for your consideration in adjudging an appropriate sentence for this accused." *Id*. On appeal, the CAAF quoted *Mamaluy* with approval, "[S]entences in other cases cannot be given to court-martial members for comparative purposes." *Id*. at 484 (quoting *Mamaluy*, 27 C.M.R. at 180). Holding the military judge's instruction "accurately states the law," the CAAF found no abuse of discretion. *Id*. at 485.

In contrast, in *United States v. Maracle*, the military judge ruled the defense was not permitted to introduce the specific sentence the appellant had received from an earlier court-martial because it was "irrelevant" to the current proceedings. 26 M.J. 431, 432 (C.M.A. 1988). The defense then objected on "completeness" grounds when the prosecution introduced the record of the appellant's prior court-martial with the sentence "masked." *Id*. The CMA held

the military judge erred "in ruling that the fact of the sentence at the earlier court-martial was irrelevant." *Id.* The court explained,

> Surely, the earlier court-martial and its sentence had some bearing on the later court-martial in terms of appellant's circumstances at the time of trial and his chances for rehabilitation. R.C.M. 1001(c)(1)(B). Moreover, basic considerations of fairness require that if the members be informed that appellant committed prior crimes for purposes of sentencing, they also should be informed how he was punished for them. [Mil. R. Evid.] 106.

*Id.* at 433.

In *United States v. Douglas*, the military judge ruled the appellant's sentence from a previous court-martial "was irrelevant and, therefore, ordered it redacted from the promulgating order" offered into evidence by the prosecution. 55 M.J. 563, 565 (A.F. Ct. Crim. App. 2001), *aff'd*, 57 M.J. 270 (C.A.A.F. 2002). This court held that, contrary to the military judge's ruling, "[a]s a matter of law" the adjudged sentence was a relevant and admissible part of the promulgating order, which was itself admissible under Mil. R. Evid. 1001(b)(3). *Id.* at 566 (citing *Maracle*, 26 M.J. at 432–33).

Whether an error is harmless is a question of law we review de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003)). For preserved nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the result. *See United States v. Frost*, 79 M.J. 104, 111 (C.A.A.F. 2019) (citation omitted). In conducting this analysis, we consider the strength of the prosecution and defense cases and the materiality and quality of the evidence in question. *Id.* (citation omitted).

**3. Analysis**

Appellant contends the military judge abused his discretion by excluding the sentence from *Casillas I* from PE 18. He argues Mil. R. Evid. 106, the "rule of completeness," required that the EoJ offered by the Government include not only the findings but the sentence. *See* R.C.M. 1111 (providing the entry of judgment "should provide a complete statement of the findings and the sentence"). Appellant contends the sentence was relevant as part of his service history and for purposes of evaluating his rehabilitation potential and the need for deterrence. Moreover, Appellant argues *Barrier* is distinguishable and "inapt" for several reasons. For example, *Barrier* addressed a reference to the sentence received by "another accused in an unrelated case." 61 M.J. at 485. In addition, unlike *Barrier*, the purported relevance of the prior sentence was not for "comparative purposes," *id.* at 486, but for the purpose of assessing Appellant's rehabilitation potential and the need for deterrence and protection of

society. Appellant further argues any concern that the court members might be confused or misled by the previous sentence, or the convening authority's actions with respect to deferment and waiver of forfeitures, could be mitigated by appropriate instructions from the military judge. Finally, Appellant avers he was prejudiced by the error "because the members sentenced Appellant without a full picture of the deterrence, protection, and rehabilitation that was already in play."

In response, the Government commendably draws the court's attention to *Maracle* and *Douglas*, cases which were not cited in Appellant's brief. The Government evidently concedes that *Barrier* is not controlling and that evidence of an appellant's own sentence from a prior court-martial may, in principle, be admissible in presentencing. However, the Government contends the military judge nevertheless "recognized the inherent Mil. R. Evid. 403 issues present in allowing members to see Appellant's sentence from his prior court-martial," as well as the convening authority's mitigating actions, which "would have invited confusion among the members." The Government contends we should find no abuse of discretion because the military judge conducted an appropriate Mil. R. Evid. 403 balancing, and the exclusion was "well within the range of choices available to him." The Government further asserts that should this court find error, Appellant has failed to demonstrate prejudice.

We agree with Appellant that the military judge abused his discretion. We find *Maracle* and *Douglas* to be more apt precedents than *Barrier* with respect to an appellant's *own* sentence from a prior conviction. Such information regarding Appellant's situation, military record, and disciplinary history has relevance in presentencing proceedings quite apart from mere sentence comparison. Moreover, the Rules for Courts-Martial appear to contemplate using the entry of judgment, presumably unredacted, as an appropriate means of proving the prior conviction. *See* R.C.M. 1001(b)(3)(C), Discussion.

Such evidence, although generally relevant, is still subject to Mil. R. Evid. 403 balancing on a case-by-case basis. *See Douglas*, 55 M.J. at 566 ("Subject to Mil. R. Evid. 403, the promulgating order from the appellant's prior court-martial was admissible under R.C.M. 1001(b)(3)."). Although a military judge who puts his Mil. R. Evid. 403 analysis on the record is entitled to substantial deference, we may nevertheless find an abuse of discretion where he clearly relies on incorrect legal principles. *See Ramirez*, 84 M.J. at 176; *Ediger*, 68 M.J. at 248. Such is the case here. The military judge clearly tied his Mil. R. Evid. 403 analysis to his erroneous belief that *Barrier* and *Mamaluy* were controlling.

Applying Mil. R. Evid. 403 ourselves de novo, without deference to the military judge's analysis, we do not find the probative value of the redacted sentence is substantially outweighed by countervailing concerns. As *Maracle* and *Douglas* indicate, Appellant's sentence from *Casillas I* was relevant for

presentencing purposes at *Casillas II*. We find concerns that the court members may have attempted to engage in sentence comparison, or might have been confused or misled by the convening authority's mitigating actions with respect to forfeitures in *Casillas I*, could be adequately addressed by appropriate instructions.

Turning to prejudice, we acknowledge the court members specifically asked whether they could be informed of Appellant's prior sentence. However, although this fact suggests the members were interested in the prior sentence, it provides little insight into *how* they would have weighed such information. The Government argues the redaction of the sentence likely actually assisted Appellant in avoiding a punitive discharge, in that the members may have assumed he had already been adjudged one based on the large number of offenses for which he had previously been convicted. For his part, Appellant vaguely suggests the court members were deprived of the "full picture," without articulating how that information would have lessened the adjudged sentence. We are mindful that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)). Because we have set aside Appellant's conviction as to Specification 1 of the Charge on double jeopardy grounds (*see* section II.A, *supra*), we reassess Appellant's sentence below (*see* section II.H, *infra*). In performing this reassessment, we have taken into account the military judge's error with respect to PE 18, and we are satisfied the reassessed sentence is free of any prejudicial effect of that error.

## F. Completeness of the Record

### 1. Additional Background

Trial counsel stated on the record that "[a]n Article 30a[, UCMJ, 10 U.S.C. § 830a,] proceeding was held in connection with this case on 28 April 2020." The record of this proceeding was not included in the record of trial with the other pretrial matters. However, the sworn affidavit by an OSI special agent in support of the request for a search and seizure warrant, and the warrant issued by the military judge related to certain email accounts, both dated 28 April 2020, are included in the record as attachments to appellate exhibits.

On appeal, in response to Appellant's assignments of error, the Government moved to attach additional records related to the Article 30a, UCMJ, proceedings. These include documents related to the military judge's detailing for the pre-referral proceeding, ex parte emails between trial counsel and the military judge, unsworn versions of the agent's declaration and application for the search and seizure warrant, trial counsel's request for the military judge to

issue a temporary nondisclosure order and a draft order, draft search and seizure warrants for the military judge's signature, as well as copies of the search and seizure warrant and nondisclosure order signed by the military judge.

**2. Law**

Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted).

A complete record of the proceedings, including all exhibits, must be prepared for any general court-martial that results in, *inter alia*, confinement for more than six months. Article 54(c)(2), UCMJ, 10 U.S.C. § 854(c)(2). "Except as provided in [Article 54(c)(2), UCMJ], the record shall contain such matters as the President may prescribe by regulation." Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1).

A record of a proceeding under Article 30a, UCMJ, "shall be included in the record of trial" if the charges are referred to trial. R.C.M. 309(e).

"In assessing either whether a record is complete . . . the threshold question is 'whether the omitted material was "substantial," either qualitatively or quantitatively.'" *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted). "[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the [G]overnment must rebut." *United States v. Harrow*, 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000).

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a).

**3. Analysis**

Appellant correctly notes R.C.M. 309(e) required a record of the Article 30a, UCMJ, proceedings to be included in the record of trial. He contends the omission was substantial "because the warrant authorized in this Article 30a proceeding was a subject at issue in Appellant's trial." Specifically, at trial the Defense filed a motion to suppress digital evidence obtained in violation of Appellant's Fourth Amendment rights based in part on the rationales that the OSI agent's affidavit did not support probable cause, and that the OSI search exceeded the scope of the warrant issued. Although the Defense evidently had access to the affidavit and warrant themselves, which were attached to the Defense's motion, Appellant contends that "[w]ithout the application [for the warrant,] this Court and the parties cannot fully assess the issues related to

this warrant; therefore, the omission is qualitatively substantial." As a remedy, Appellant contends this court should either remand the record for correction, set aside the convictions, or set aside the sentence.

In response, the Government contends this court may complete its appellate review because the Government moved to attach the missing record of the Article 30a, UCMJ, proceedings. In addition, the Government notes the Article 30a, UCMJ, proceedings are not referenced in any of Appellant's other assignments of error, and that the affidavit and search and seizure warrant are included in the record. For these reasons, the Government contends Appellant has not been prejudiced, and remanding the record for correction is unnecessary.

As an initial matter, we clarify the significance of this court granting the Government's motion to attach missing documents from the Article 30a, UCMJ, proceeding. As we explained in similar circumstances in another case:

> We understand this to mean that we can consider the [attached matter] in deciding whether the Government has rebutted the presumption of prejudice on appeal. To be clear, we are not holding that the record of trial is now complete . . . . If the Government sought to make the record of trial complete, it should have requested our court order a certificate of correction.

*United States v. King*, No. ACM 39583, 2021 CCA LEXIS 415, at *29 (A.F. Ct. Crim. App. 16 Aug. 2021) (unpub. op.), *aff'd*, 83 M.J. 115 (C.A.A.F. 2023); *see also* R.C.M. 1112(d) (providing guidance for correcting incomplete records of trial).

For purposes of our analysis, we assume without holding the omission is substantial. Nevertheless, we agree with the Government the omission has not materially prejudiced Appellant's substantial rights. The search and seizure warrant and associated affidavit themselves are in the record and available for review. These two documents were the significant elements of the Article 30a, UCMJ, proceedings for purposes of the defense motion to suppress at trial. Appellant has not cited the Article 30a, UCMJ, proceedings in his other assignments of error, nor has he explained how the absence of the other Article 30a, UCMJ, documents has materially adversely affected his appeal. Accordingly, we find no relief is warranted.

## G. Post-Trial and Appellate Delay

### 1. Additional Background

The court members sentenced Appellant on 23 June 2023, and the military judge entered the judgment on 11 August 2023. The record of trial and transcript were certified on 15 and 19 October 2023, respectively. The record of trial

was docketed with this court on 14 December 2023. Thereafter, Appellant requested and was granted 11 enlargements of time before filing his assignments of error on 21 January 2025. The Government filed its answer brief on 3 March 2025, after obtaining an enlargement of time. Appellant filed his reply brief on 17 March 2025, after obtaining an additional enlargement of time.

**2. Law**

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the [CCA] within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." 63 M.J. at 142. In *United States v. Livak*, this court adapted the *Moreno* standard for cases referred to trial on or after 1 January 2019 and established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Id.* at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

**3. Analysis**

### a. Post-Trial Delay – Sentencing to Docketing

The record of trial was docketed with this court 171 days after sentencing, exceeding the 150-day *Livak* standard for facially unreasonable delay. Accordingly, we have considered the *Barker* factors and, under the circumstances of this case, we find no violation of Appellant's due process rights. According to

court reporter chronologies included with the record, several factors appear to have contributed to the delay, including, *inter alia*, the length of the trial, the court reporters' workload, coordination among multiple court reporters, one of the court reporters changing his duty station during the process, and the need to mail the record from an overseas location. In addition, we note the record of trial in this case is substantial, including 88 total exhibits and over 1,600 pages of transcript.

Significantly, Appellant has not alleged cognizable prejudice from the delay. We do not perceive any particularized anxiety or concern Appellant experienced from the delay distinct from other appellants awaiting a decision on their appeal. Our review has not occasioned any rehearing, nor do we perceive particular reasons why any further appeal might be impaired due to the delay. With regard to oppressive incarceration, we note that as a result of his original court-martial, on 3 March 2023 Appellant was sentenced to two years in confinement. As a result of the instant appeal, we have set aside the finding of guilty as to Specification 1 of the Charge and reassessed Appellant's adjudged term of confinement from four years and 11 months to two years. Therefore, as of the issuance of this opinion, Appellant's effective term of confinement from both courts-martial is four years beginning on 3 March 2023. Thus, at this point, it does not appear that Appellant has suffered any oppressive incarceration as a result of the post-trial delay. Accordingly, we do not find Appellant has suffered any cognizable prejudice for purposes of *Moreno* and *Livak*.

Absent prejudice, we find the post-trial delay involved in Appellant's case has not been so egregious as to adversely affect the perception of the military justice system. *See Toohey*, 63 M.J. at 362. Furthermore, recognizing our authority under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Valentin-Andino*, 85 M.J. 361, 366 n.4 (C.A.A.F. 2025). We conclude such relief is not warranted.

### b. Appellate Delay

Over 18 months have elapsed since Appellant's record of trial was originally docketed with the court. Therefore, under *Moreno* there is a facially unreasonable delay, although we note the 18-month threshold has been exceeded by slightly more than three months. Accordingly, we have again considered the *Barker* factors and find no due process violation. Appellant has not specifically alleged cognizable prejudice from appellate delay. For the reasons stated above with respect to the pre-docketing delay, we find no cognizable prejudice. Absent prejudice, we similarly find the post-docketing delay involved in Appellant's case has not been so egregious as to adversely affect the perception of the military justice system. The large majority of the delay was the result of defense

requests for enlargements of time in which to file the assignments of error. In addition, we have considered the large size of the record and the number and complexity of the issues Appellant raised. Accordingly, we find no egregious delay and no violation of Appellant's due process rights, *see Toohey*, 63 M.J. at 362; nor do we find any relief warranted in the absence of a due process violation, *see* 10 U.S.C. § 866(d)(2).

## H. Sentence Reassessment

Having set aside the finding of guilty as to Specification 1 of the Charge, alleging wrongful possession of child pornography, we have considered whether we can reliably reassess Appellant's sentence in light of the factors identified in *Winckelmann*, 73 M.J. at 15–16. Our task is to discern whether we can "determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity." *Id.* at 15 (quoting *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006)) (additional citation omitted).[27] We find that we can.

First, we find there has not been a *dramatic* change to the penalty landscape and exposure. *See id.* at 15. The maximum imposable term of confinement is reduced from 20 years to 10 years, but the other available punishments remain the same. This factor favors reassessment.

Second, Appellant was sentenced by court members rather than the military judge. *See id.* at 16. This factor favors a rehearing.

Third, the remaining offense "capture[s] the gravamen of the criminal conduct included within the original offenses." *Id.* Rather than conviction for wrongful possession and wrongful viewing of child pornography—concerning the same images, on the same device, and over the same time period—Appellant remains convicted of wrongfully viewing the child pornography. In addition, "significant or aggravating circumstances addressed at the court-martial," notably including Appellant's prior court-martial conviction at *Casillas I*, "remain admissible and relevant" with respect to the remaining offense. *Id.* This factor favors reassessment.

Fourth, the remaining offense of viewing child pornography is of a type the judges of this court "have experience and familiarity with." *Id.* This factor also favors reassessment.

Weighing these "illustrative, but not dispositive," factors together, and considering the totality of the circumstances, we conclude we may reliably

---

[27] Because the error was of constitutional magnitude, we are required to be certain beyond a reasonable doubt our reassessment cures the error. *Moffeit*, 63 M.J. at 41 (citations omitted).

reassess Appellant's sentence. *Id*. at 15. We reassess Appellant's sentence to confinement for two years and reduction to the grade of E-1.

## III. CONCLUSION

The finding of guilty as to Specification 1 of the Charge is **SET ASIDE**. Specification 1 of the Charge is **DISMISSED**. We reassess the sentence to confinement for two years and reduction to the grade of E-1. The findings as to Specification 2 of the Charge and the Charge, as entered, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The findings of guilty as to Specification 2 of the Charge and the Charge, and the sentence, as reassessed, are **AFFIRMED**.

MASON, Judge (concurring in part and dissenting in part):

Where the parties at trial are of the same mindset, that the conduct at issue in a second trial is separate and apart from the conduct prosecuted at a first trial, I cannot agree that there is a Double Jeopardy violation. Even if I could, under these circumstances, I would not agree that we should exercise our extraordinary power to pierce waiver and grant absolute relief on the possession offense in the absence of a significant factual predicate to do so. For these reasons, while I concur with the majority's opinion in most respects, as explained below, I must respectfully dissent with regards to the decision to pierce waiver, set aside the finding of guilt for the possession offense and dismiss the specification. I would affirm the findings and sentence as entered.

The majority opinion correctly outlines many of the relevant facts, so I decline to reiterate them. However, some additional details are worth noting or emphasizing.

The issue of Appellant's first trial was raised during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to discuss the Government's motion to admit certain evidence pursuant to Mil. R. Evid. 404(b). During the Article 39(a), UCMJ, session on this motion, amongst other things, the trial counsel sought to admit certain images of child pornography purportedly possessed by Appellant. The parties made clear that these images were the "charged images" from Appellant's first trial. The trial counsel was offering those images as evidence of knowledge, motive and lack of mistake as it pertained to Appellant's knowing and wrongful viewing and possession of the "charged images" in this, Appellant's second trial.

Appellant and his counsel were apprised of the specific "charged images" that formed the basis of the specifications at issue in his second trial. None of

these images were at issue in Appellant's first trial. In fact, none of these "charged images" at issue in Appellant's second trial were admitted at Appellant's first trial for any reason.

While discussing the images to be admitted pursuant to the Mil. R. Evid. 404(b) motion, the charged images from Appellant's first trial, the military judge raised the potential question about Double Jeopardy and asked, "Now as to the IPhone XR image that is uncharged in this case, that was charged in the first case." Both the trial counsel and the trial defense counsel confirmed that was correct. After hearing the positions of the parties, the military judge stated, "Okay, this is all the part of me just getting my facts straight and understanding what images we're looking at in charged and uncharged misconduct. Okay. So that answers that."

The issue of Double Jeopardy was not raised again during this trial.

As part of the Government's case in the presentencing proceedings, trial counsel offered the entry of judgment from Appellant's first trial. An unredacted portion of that entry of judgment is in the record as an appellate exhibit.

The essence of the protection against Double Jeopardy is that a person may not be twice subjected to prosecution for the same offense. U.S. CONST. amend. V. The United States Supreme Court provided guidance on how to evaluate whether two offenses as charged are the "same." *Blockburger v. United States*, 284 U.S. 299, 303–04 (1932). The Court held, "where the same act or transaction constitutes a violation of two distinct statutory provision, the test to be applied . . . is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

The United States Court of Appeals for the Armed Forces (CAAF) declined to follow a "strict application of *Blockburger* in the context of the intentionally capacious Article 134, UCMJ." *United States v. Rice*, 80 M.J 36, 42 (C.A.A.F. 2020). Rather, the Court held that only some "differences are valid ones when determining what constitutes the same offense for purposes of a double jeopardy analysis involving Article 134, UCMJ." *Id.* at 43.

The CAAF provided a detailed analysis of *Rice* in *United States v. Driskill*, 84 M.J. 248, 253 (C.A.A.F. 2024). I adopt that here.

Mindful of our superior courts' guidance, I, like the parties and the military judge at trial, do not see a Double Jeopardy violation here. The majority opinion relies heavily on the CAAF's opinion in *United States v. Forrester*, 76 M.J. at 479 (C.A.A.F. 2017), to justify their decision to set aside the conviction for possession. The majority opines that because the facts of the case as presented in this, Appellant's second trial, indicate that his viewing and possession occurred on his iPhone XR, that Appellant was already prosecuted for any possession of child pornography during the charged timeframe at issue. This view

significantly expands the holdings in *Forrester* to many other potential cases not similarly situated.

In *Forrester*, the appellant was charged with four specifications of possessing child pornography as stored on different devices. To resolve whether the appellant's offenses were multiplicious, the *Forrester* court focused on determining the allowable unit of prosecution. *Id.* at 486. In *Forrester*, the court affirmed the Government's charging scheme and the appellant's convictions finding that the allowable unit of prosecution in that case was not the image, which was identical or nearly identical on each of the devices, but the devices. Such an interpretation makes sense in that case as the storage of an image of child pornography on separate devices requires different, if albeit repeatable, actions to place it on those different devices. That is true regardless of whether the actual image is unique to each stored device or is the same image saved to multiple devices. As each actus reus is different, it makes sense to permit multiple prosecutions as each constitutes a separate offense.

To be clear though, Appellant's case here, his second trial, is not substantially similar to *Forrester*. Thus, *Forrester* is distinguishable and the majority's expansive application to Appellant's case is unwarranted. First, the charging scheme is substantially different than *Forrester*. In Appellant's first trial, he was charged with possessing child pornography "within an IPhone XR." This specification stands in stark contrast with the possession specification for which Appellant was charged in his second trial. Notably, the possessing specification in the second trial does not reference a specific device at all. This presents a fundamental error in trying to apply *Forrester* to this case. For while *Forrester* answered the question of whether a single image could be chargeable where all the devices are referenced in the specifications themselves, it left unanswered whether specifications that do not reference devices pose Double Jeopardy (or more precisely, multiplicity) concerns when an appellant was previously convicted of specifications that do reference devices. In my view then, *Forrester* is inapplicable to this case and leaves a gap in the law left unanswered.

In light of this gap in the law, I believe a better approach is to go back to *Blockburger*, *Rice*, and *Driskill* to answer the fundamental question: is an accused who possesses completely different images from what he was previously convicted, protected against prosecution for this conduct that is separate and apart from his original conduct? The answer in my view is no. There was no question in the mind of the trial counsel or even the trial defense counsel that the offenses were based on "charged images" for each case. There was no overlap of the single image that was "charged" in the first trial and the other images "charged" in the second trial. The record before us is conclusive on this point. Once that point was articulated to the military judge, his response was, "[s]o

41

that answers that." The military judge did not commit plain error by permitting the case to proceed, allowing Appellant to be convicted after evidence beyond a reasonable doubt was presented, or by appropriately entering findings of guilty at this second trial.

The majority's recognition of the problematic application of *Forrester's* apparent holding to a viewing specification further illustrates that their reading of *Forrester* is erroneous. They recognize, in a situation where an appellant knowingly possessed images of child pornography in his camera roll, for example, on his cell phone, merely looking at his email application or his text messages would *never* constitute a legally sufficient viewing offense. For while he was looking at his cell phone, he was not viewing child pornography. Yet, to apply *Forrester's* holding that the "material" was the actual phone, if that appellant knowingly looked at the phone (even if the screen was turned off), that act would meet the legal definition of viewing child pornography. Of course, as they acknowledge this problem by saying, "[s]urely not," essentially admitting that interpretation crosses the line into a realm of ridiculousness. But they do not adequately address the reality that *Forrester's* interpretation is of a definition of child pornography that does not distinguish between possession, viewing, or any other type of child pornography related offenses. With all due respect to the majority's opinion, to interpret the definition of child pornography in the way set forth here yields absurd results. *See United States v. Parino Ramcharan*, 84 M.J. 445, 450 (C.A.A.F. 2024); *see also United States v. McPherson*, 81 M.J. 372, 378 (C.A.A.F. 2021). Thus, the holding in *Forrester* should be strictly limited to the unique facts of that case, which are not analogous to the facts here.

This absurdity is further illustrated in cases of distribution specifications. Where an appellant knowingly possesses child pornography on his phone and hands that phone to a friend to make a phone call, that may meet the legal definition of distribution of child pornography. That would be true even if he never intended the friend to see or even know that there was child pornography on the phone and the friend never even opened the application in which the digital files could be seen. He would have knowingly put the "material," the cell phone, in the possession of another. Obviously, such an example should *never* be found to be legally sufficient to constitute a distribution offense.

Applying *Forrester* in the way that the majority opinion does here to justify setting aside the possession specification does not withstand scrutiny. In my view, we should find that *Forrester* is inapplicable as these facts are different than *Forrester*. I would find that there is no Double Jeopardy violation.

Moreover, I do not agree that the majority should even have addressed this issue. I think that our exercise of the power to pierce waiver should be used with great caution and only upon being fully informed of the facts. Here, as the

majority opinion correctly notes, the record of trial for his first trial is on our docket. Yet, for obvious reasons, we cannot and did not reference it. Both the majority opinion and mine were based solely on the law and the record of trial for this case.[*] Undoubtedly, there are salient and perhaps determinative facts that exist in the record of trial for the first trial that we do not have access to. Therefore, the better course of action, in my opinion, is to accept the waiver and leave it untouched. This court should not pierce a waiver and grant dismissal based on less than all of the facts.

Therefore, for all the above reasons, I must respectfully dissent with the majority's decision to pierce waiver, set aside the conviction for possession and order a dismissal.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[*] I recognize that a portion of the transcript for the first trial was attached to the record. However, I continue to have significant questions left unanswered that could impact my view of this issue. Those answers are likely to be found in the entirety of the transcript or pretrial filings. Without those answers, I cannot feel comfortable piercing waiver to overturn a conviction based on an issue that none of the informed parties at trial thought was a problem.